# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| CAROL T. HERRING, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 06-5525 |
| v. | : | |
| | : | |
| CHICHESTER SCHOOL DISTRICT et al., | : | |
| Defendants. | : | |

## Memorandum and Order

YOHN, J.                                                                                    February _____, 2008

Plaintiff Carol Herring has filed an Amended Complaint in her lawsuit against the

Chichester School District ("the District"); Michael Golde, the superintendent of the District; and

Gloria Senatore, director of pupil services of the District.  Herring's Amended Complaint

includes:  (1) a retaliation claim under section 504 of the Rehabilitation Act of 1973 ("§ 504"),

29 U.S.C. § 794, against the District; and (2) a First Amendment retaliation claim under 42

U.S.C. § 1983 against all defendants.  Presently before the court is defendants' motion to dismiss

Herring's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the

reasons discussed below, the court will deny the motion.

## I.      Factual and Procedural Background

Herring makes the following allegations in her Amended Complaint, which the court

must accept as true for purposes of a motion to dismiss.  Parents of children with disabilities who

attend school within the District have retained Herring to represent them in matters pertaining to

the students' educational programs.  (Am. Compl. ¶ 7.)  Over the course of Herring's

1

representation of her clients, she has reported that the District discriminates against students with disabilities and fails to provide a free and appropriate education to these disabled students that is equal to the education provided to nondisabled students. (*Id.* ¶ 8.) Herring has also complained of "inadequate facilities or services; improper employee conduct, including falsified reports or lack of required reports or files maintained in an employee's basement; mismanagement of funds; failure to fully and truthfully document progress or work completed; and other violations of laws." (*Id.*) She has made these reports to appropriate employees and officials within the District and the Commonwealth's education department. (*Id.*) Additionally, Herring has addressed these problems during students' individualized education program ("IEP") meetings and during due process hearings. (*Id.* ¶ 12.) During these meetings and hearings, she has "couched her advocacy in terms of racial discrimination" in an attempt to determine what the District has used its special education funding for because the District has not used the funding for special education. (*Id.*)

On January 28, 2004, Herring filed a due process complaint on behalf of C.D., a student with disabilities. (*Id.* ¶ 9.) C.D. is Kay Evans's child. (*Id.*) On or about February 10, 2004, Sharon Montanye, the District's attorney in that matter, unsuccessfully attempted to negotiate a settlement with Herring. (*Id.* ¶ 14.) During this conversation, Herring instructed Montanye that Montanye and the District should communicate only with her, and not with Evans. (*Id.* ¶ 14.) Despite this instruction, defendant Senatore directly contacted Evans and attempted to dissuade her from being represented by Herring. (*Id.* ¶ 15.) In March 2004, Herring contacted Montanye about Senatore's contact with Evans, but Senatore continued to intimidate, threaten, and coerce Evans in an attempt to undermine Herring's representation of Evans and C.D. (*Id.* ¶ 15.)

In March 2004, Herring and Evans attended a meeting to discuss C.D.'s educational program.  (*Id.* ¶ 17.)  This meeting was held at an alternative high school in the District.  (*Id.*)  While at the school, an African American student informed Evans that a white student had spit on him.  (*Id.* ¶ 18.)  Evans told the student to speak with Herring about the incident because Herring is a lawyer.  (*Id.*)  The student approached Herring, but Herring informed him that she first needed to speak with his parents.  (*Id.*)  Herring told the school principal the student had problems and asked for the student's parents' contact information, but the principal would not provide the information.  (*Id.*)

On or about March 30, 2004, Herring returned to the high school on C.D.'s behalf for an IEP meeting.  (*Id.* ¶ 19.)  The student Herring had spoken with during her previous visit greeted her in the hallway.  (*Id.*)  During the IEP meeting, Montanye threatened Herring and intimidated her by accusing her of soliciting students as clients.  (*Id.*)

Subsequently, Michael Puppio, an attorney for the Delaware County Intermediate Unit, sent Herring a letter accusing her of "an unauthorized conversation" with another student and asking her to refrain from this type of contact.  (*Id.* ¶¶ 20-21.)  This letter was sent to five additional persons unknown to Herring.  (*Id.* ¶ 21.)  Herring interpreted Puppio's letter as an indirect attempt by the District to threaten and intimidate her.  (*Id.*)  This letter had a chilling effect on Herring's representation of her clients.  (*Id.*)  Puppio sent Herring another letter on April 20, 2004 threatening her with *Dragonetti* and Rule 11 motions, even though there were no lawsuits pending at that time.  (*Id.* ¶ 22.)

In April 2004, Herring and the District reached a confidential settlement on C.D.'s due process matter.  (*Id.* ¶ 23.)  On May 5, 2004, Herring attempted to visit Senatore at Hilltop

Elementary School to discuss the settlement.  (*Id.* ¶ 24.)  When Herring entered the main office area, she asked to see Senatore and was directed to Senatore's office, but Senatore was not there. (*Id.*)

The next day, Herring called Montanye to ask if Montanye would be representing the District on other due process matters.  (*Id.* ¶ 25.)  When Montanye said she would continue to represent the District, Herring stated that she would be filing more due process complaints.  (*Id.*) After this, the District began intimidating and retaliating against Herring.  (*Id.* ¶ 26.)  On May 7, 2004, Senatore sent Herring two separate letters.  (*Id.* ¶ 27.)  One letter was an official "trespass notice."  (*Id.* ¶ 27(a).)[1]  Defendant Golde, a policymaker, participated in or approved the sending of this notice.  (*Id.* ¶¶ 52, 61.)  Thereafter, the District maintained a practice that Herring would be considered a trespasser anytime she entered the District's property without its prior approval. (*Id.* ¶ 43.)  The second letter informed Herring that Senatore had directed the school office staff not to take phone calls from Herring and directed Herring to communicate with Senatore only in writing by mail or fax.  (*Id.* ¶ 27(b).)

Early in the day on June 2, 2004, Herring sent a fax to Senatore informing her that Herring would be attending an IEP meeting on behalf of another client, B.E., later that day.  (*Id.* ¶ 28.)  Herring also gave notice that she would be accompanied by another person in order to avoid any false accusations about her conduct.  (*Id.*)  In response to Herring's fax, the District canceled the IEP meeting.  (*Id.* ¶ 29.)

On June 14, 2004, Herring attended the IEP meeting that had originally been scheduled

---

[1] Neither side has supplied the court with a copy of the document, and both characterize it differently throughout their briefs.

for June 2.  (*Id.* ¶ 30.)  Herring brought a security person with her to this rescheduled meeting, but at the parent's request, the security person sat outside the meeting.  (*Id.*)  During the meeting, Senatore rapidly cross-examined B.E., causing B.E. to become visibly upset.  (*Id.* ¶ 31.)  Herring attempted to intervene, and Senatore and the District became hostile.  (*Id.*)  Andrea Saia, the lawyer representing the District at that meeting, did not attempt to diffuse the situation.  (*Id.*)  The District refused to provide Herring and B.E.'s parent with the written evaluation that had been provided to the District's staff.  (*Id.* ¶ 32.)  Due to multiple irregularities in the meeting, Herring contacted the Pennsylvania Office of Dispute Resolution and asked a facilitator to intervene on B.E.'s behalf.  (*Id.*)

In July 2004, C.B., a student with disabilities who had previously been homeless, moved in with Evans.  (*Id.* ¶ 33.)  C.B. was Evans's cousin.  (*Id.*)  Evans's mother, Debra Thorpe, was C.B.'s legal guardian.  (*Id.*)  Thorpe attempted to register C.B. as a student in the District, but the District refused C.B.'s registration on the ground that he was illegally in the District.  (*Id.*)  Nonetheless, the District sent C.B.'s program materials to Evans.  (*Id.* ¶ 34.)  Herring represented C.B. on educational matters and attended an IEP meeting on his behalf on December 20, 2004.  (*Id.*)  However, the District's supervisor of education adjourned the meeting when Herring appeared at the meeting.  (*Id.* ¶ 36.)

In November 2004, Evans requested a due process hearing for her other son, L.E., who is also a student with disabilities attending school in the District.  (*Id.* ¶ 35.)  The District then contacted Evans's landlord and the Section 8 housing authority.  (*Id.*)  The housing authority attempted to have Evans evicted, but Herring prevailed in this matter on Evans's behalf in 2005.  (*Id.*)

On January 7, 2005, Herring attended a due process hearing at the District on L.E.'s behalf. (*Id.* ¶ 37.) Either Montanye (an alleged agent of the District), Golde, or Senatore called the police to report Herring for trespassing. (*Id.* ¶¶ 38, 40-41.) Two police officers then came to the hearing and gave Herring two citations for "felony criminal defiant trespass,"[2] one for her presence at the school on December 20, 2004 and the other for her presence at the January 7, 2005 meeting. (*Id.*) After the police officers arrived, the hearing officer postponed the hearing on his own motion. (*Id.* ¶ 53.) The District, Golde, and Senatore continued to retaliate against and intimidate Herring after the meeting. (*Id.* ¶ 44.) Specifically, Golde provided false testimony, under oath, at Herring's criminal trespass trial. (*Id.* ¶ 54.)[3]

On December 19, 2006, Herring filed her original Complaint, which included claims and defendants not in the Amended Complaint. The defendants filed motions to dismiss, and I held oral argument on October 29, 2007 to clarify the factual allegations in Herring's Complaint and the bases for her claims. On November 6, 2007, I dismissed some of the claims and defendants and granted Herring leave to amend her § 504 claim against the District and her § 1983 claims against the District, Golde, and Senatore. *See Herring v. Chichester Sch. Dist.*, No. 06-5525, 2007 WL 3287400 (E.D. Pa. Nov. 6, 2007). Herring filed her Amended Complaint on November 28, 2007. The District, Golde, and Senatore filed the current motion to dismiss the Amended Complaint on December 14, 2007. I will deny defendants' motion to dismiss for the reasons discussed herein.

_____

[2] Pennsylvania grades defiant trespass as a summary offense generally and as a misdemeanor in limited situations. 18 Pa. Cons. Stat. § 3505(b)(2). Criminal proceedings in a summary case may be instituted by a citation. Pa. R. Crim. P. 400(1).

[3] Herring was ultimately acquitted of the trespass charges. (Am. Compl. ¶ 44.)

6

**II.      Discussion**

**A.      Standard of Review**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of a complaint. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir.1980) (citation omitted).  When

evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact

in the plaintiff's complaint, and any reasonable inferences that may be drawn therefrom must be

viewed in the light most favorable to the plaintiff. *See Phillips v. County of Allegheny*, __ F.3d

__, 2008 WL 305025, at *3 (3d Cir. Feb. 5, 2008); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.

1996).

The complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This statement must "'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v.

Twombly*, 127 S. Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Id.* at 1964 (citations and alterations omitted).  Furthermore, "[f]actual allegations

must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted);

*see also Phillips*, 2008 WL 305025, at *4.[4]

---

[4] In her legal standard, Herring argues that in light of the Supreme Court's recent decision
in *Twombly*, the pleading standard is now a "plausibility" standard.  The Third Circuit recently
determined *Twombly* did not provide for a "plausibility" standard but rather reiterated that

**B.      § 504 Retaliation Claim (Count One)**

Count One of Herring's Amended Complaint alleges a violation of § 504 of the

Rehabilitation Act against the District.  The District argues that Herring's Amended Complaint

should be dismissed because she has not properly alleged the elements of her § 504 claim as

required by Third Circuit precedent and the court's November 6, 2007 Memorandum and Order.[5]

---

Federal Rule of Civil Procedure 8 requires a notice pleading standard.  This notice standard
encompasses the concept of a "showing," which "requires only notice of a claim and its
grounds."  *See* 2008 WL 305025, at *6.  Herring is correct, however, that in light of *Twombly*,
the "no set of facts" language from *Conley* is no longer part of the standard used when
considering a 12(b)(6) motion to dismiss.  *See Twombly*, 127 S. Ct. at 1968; *Phillips*, 2008 WL
305025, at *5.

[5] The District continues to argue that Herring must exhaust her administrative remedies
before bringing her § 504 retaliation claim in federal court.  In addition to *Weber v. Cranston
School Committee*, 212 F.3d 41 (1st Cir. 2000), the District now also relies on *Gaskin v.
Pennsylvania*, No. 94-4048, 1995 WL 154801 (E.D. Pa. Mar. 30, 1005), to support its argument.
The District asserts that because Herring seeks declaratory relief, *Weber* and *Gaskin* require
Herring to exhaust her administrative remedies.  Herring is not, however, seeking declaratory
relief in her Amended Complaint.

The Memorandum and Order dated November 6, 2007 addressed *Weber*; therefore, I will
not address it again here.  A brief analysis of *Gaskin* shows that it also does not lead to the
conclusion that Herring must first exhaust her administrative remedies.  In *Gaskin*, the court
determined that nonprofit advocacy groups that had allegedly suffered an actual injury had
standing to bring a class action in federal court under the Individuals with Disabilities Education
Act ("IDEA") against several state agencies for failure to properly implement IDEA's
requirements.  1995 WL 154801, at *5.  The District argues that because the *Gaksin* court
determined that advocacy groups that suffer an injury in fact have standing to sue in federal court
for IDEA violations, advocates have standing to pursue administrative remedies under IDEA if
they suffer an injury in fact.  Therefore, the District concludes, because Herring alleges she
suffered an injury in fact, she must exhaust her administrative remedies.

The District's reasoning is not persuasive.  First, the *Gaskin* court did not address the
advocacy groups' administrative exhaustion requirements.  Second, IDEA requires that before a
plaintiff files a civil action seeking relief under § 504 that is also available under IDEA, a
plaintiff must exhaust her administrative remedies.  *See* 20 U.S.C. § 1415(*l*).  The District's
argument that because Herring has standing to sue in federal court under IDEA she must exhaust
her administrative remedies before filing a federal retaliation claim misses the point.  Under
IDEA's exhaustion provision, the issue is not whether the plaintiff has standing under IDEA, but
whether the plaintiff seeks relief that is available under IDEA.  Therefore, the issue regarding

8

Furthermore, the District argues, the new facts that Herring alleges are outside of the statute of limitations.  Herring responds that viewing the facts in the light most favorable to her, she has properly alleged a § 504 retaliation claim.  She also argues that her alleged facts are not untimely because the statute of limitations did not begin to run until she had reason to know of the injuries that are the bases for this action, and she did not know of the injuries until the District called the police on January 7, 2005.

Herring's § 504 claim has a two-year statute of limitations.  *See DiFrancesco v. Aramark Corp.*, 169 F. App'x 127, 129 (3d Cir. 2006); *Kedra v. Nazareth Hosp.*, 868 F. Supp. 733, 738 (E.D. Pa. 1994).  As a federal cause of action, Herring's claim began to accrue as soon as she either was aware or should have been aware "of the existence of and source of an injury." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) (citing *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir.1988)).  The District argues that because much of Herring's allegedly protected activity took place outside the limitations period, her claim is time barred.  This argument is unpersuasive.[6]  When determining whether a claim is

Herring's exhaustion requirements is not whether Herring has standing under IDEA but whether Herring seeks relief that is also available under IDEA.  The District has pointed to nothing in IDEA's provisions which entitles an advocate to relief in the form of compensatory damages, which Herring seeks here, if a school district retaliates against that advocate for her protected activity.  The court has also not found a provision in IDEA providing such relief and will not read this type of relief into the statute.  Therefore, nothing in either *Gaskin* or IDEA demonstrates that Herring must first exhaust her administrative remedies.  Curiously, in making this out-of-time reconsideration request, the District does not even address the two Third Circuit cases on which I based my original decision, but relies on an inapplicable district court case.  As I concluded in the November 6, 2007 Memorandum and Order, Herring need not first exhaust her administrative remedies.

[6] None of the cases cited by the District supports its argument that all of Herring's claims are untimely because the protected activity took place outside the statute of limitations.  Rather, the cases determine that the injuries—i.e., the defendants' actions—must take place within the

timely, the focus is on when the alleged injuries occurred or when the plaintiff should have first

been aware of her injuries, not on when the plaintiff's protected actions took place.  Viewing the

facts Herring alleges as true, Herring would not have been aware of the existence of her alleged

injuries from the trespass citations until the District called the police on January 7, 2005.  Herring

filed her Complaint on December 19, 2006; therefore, Herring's claim that the District retaliated

against her by having two trespass citations issued to her on January 7, 2005 for her presence on

the District's property on that date and on December 20, 2004 and her claim that Golde falsely

testified against her after that are timely.

Herring also argues that she could not have known that she would have a cause of action

based on the May 2004 trespass notice until she was actually cited for trespass on January 7,

2005.  If the sending of trespass notice itself was an injury, however, Herring knew of the injury

at the time she received the notice.  Thus, to the extent that the sending of this letter to Herring is

a separate cause of action, it is barred by the statute of limitations.

If Herring's Amended Complaint alleges other occasions on which the District, its

employees, or its agents allegedly retaliated against her, a cause of action accrued separately for

---

statute of limitations period in order for the claims to be timely.  *See, e.g.*, *Porter v. Intermediate Unit*, No. 06-1145, 2007 WL 2597911, at *3-6 (W.D. Pa. Sept. 5, 2007).  Furthermore, one of the cases the District cites to support its argument actually supports Herring's argument that her claims are timely even though some of her protected activity took place outside the statute of limitations period.  *See Harley v. City of Phila.*, No. 01-6143, 2003 WL 22597606, at *4 (E.D. Pa. Nov. 4, 2003).  In *Harley*, the plaintiff brought First Amendment retaliation claims under § 1983.  The plaintiff engaged in protected activity in late 1997 and early 1998, one of the defendants' retaliatory actions occurred in April 2000, and the plaintiff filed his complaint on December 10, 2001.  The court specifically found that even though the plaintiff's protected activity took place outside of the statute of limitations period, the plaintiff's claim, based on the April 2000 act, was not time barred because the allegedly retaliatory action occurred within the statute of limitations period.  *See id.*

each alleged act because as of the time of each incident, Herring had reason to know of the injuries forming the basis of her suit.  Therefore, although Herring's protected activity that occurred prior to December 19, 2004 can be considered, to the extent that Herring alleges the District is liable for any of its retaliatory actions prior to December 19, 2004, these claims are time barred.[7]

Herring's Amended Complaint properly alleges a § 504 retaliation claim.[8]  The elements of a cause of action under § 504 that Herring must plead are "(1) that [she] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action."  *Lauren W. ex rel. Jean W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).

The District contends that Herring has not properly alleged she was engaged in protected

_____

[7] In one conclusory sentence, Herring argues that the court has previously analyzed the continuing violations doctrine.  She does not, however, address the continuing violations doctrine, the standard for its application, or why the doctrine should be applied here.  In the absence of Herring's argument on this issue, the court will not engage in that analysis.  *See West v. Phila. Elec. Co.*, 45 F.3d 744, 754-55 (explaining that it is the plaintiff who must establish that a claim falls within the continuing violations theory).  Thus, Herring is not able to rely on any other retaliatory actions taken by the District as a basis for liability because all of the other alleged actions took place outside the statute of limitations period.

[8] Under § 504, "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  The anti-retaliation provision, under which Herring brings her claim, provides:  "*No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual* for the purposes of interfering with any right or privilege secured by [the Act], or *because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing* . . . ."  34 C.F.R. § 100.7(e) (emphasis added).

activity.  According to the facts alleged in the Amended Complaint, however, Herring

participated in IEP hearings to advocate for students with disabilities and complained that the

District discriminated against these students because of their disabilities.  (*See, e.g.*, Am. Compl.

¶¶ 19, 36-37.)  These activities are protected by the anti-retaliation provision.  *See* 34 C.F.R. §

100.7(e).[9]  Herring has therefore sufficiently alleged facts that meet the first element of her § 504

claim.  The second element of the § 504 action, a chilling effect, can be sufficiently inferred from

Herring's allegation that she received two trespass citations on January 7, 2005—one for her

presence at an IEP meeting on that date, and the other for her presence at an IEP meeting on

December 20, 2004.  (*See id.* ¶¶ 41, 44.)

The third element, causation, can be alleged by averring facts that show "(1) an unusually

suggestive temporal proximity between the protected activity and the allegedly retaliatory action,

or (2) a pattern of antagonism coupled with timing to establish a causal link."  *Deflaminis*, 480

F.3d at 267.  In the alternative, causation can be inferred from the "evidence gleaned from the

record as a whole."  *Id.* (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d

Cir.2000)).  Herring has alleged that she reported and complained of the District's failure to

provide a free and appropriate education to disabled students equal to the education provided to

_____

[9] The District argues Herring's statement that "[t]hroughout the IEP meetings and due process proceedings, Herring spoke and couched her advocacy in terms of racial discrimination," (*see* Am. Compl. ¶ 12), is fatal to Herring's § 504 retaliation claim because § 504 does not protect against discrimination based on race.  The District is correct that § 504 does not address racial discrimination.  *See* 29 U.S.C. §§ 705(20), 794(a).  Nonetheless, the fact that some of Herring's complaints were based on racial discrimination is not fatal to her claim.  As is clear from the face of the Amended Complaint (*see, e.g.*, Am. Compl. ¶¶ 8, 11), and as can be inferred from additional allegations in the Amended Complaint (*see, e.g., id.* ¶¶ 36-37), Herring also couched her advocacy in terms of discrimination of the disabled.  Thus, Herring's § 504 claim does not fail simply because some of her actions included advocating against racial discrimination.

nondisabled students.  (Am. Compl. ¶¶ 8, 9.)  She also appeared on behalf of disabled students at

IEP meetings.  (*Id.* ¶¶ 17, 19, 30, 36.)  The day after the District learned Herring would be filing

more due process complaints, Senatore sent Herring a trespass notice.  (*Id.* ¶¶ 25-27.)  Finally,

when Herring appeared at an IEP meeting on January 7, 2005, the District called the police to

issue trespass citations to Herring.  (*Id.* ¶ 39.)  Therefore, causation can be inferred from the

alleged facts.  Because Herring has alleged facts sufficient to met all three elements of her § 504

retaliation claim, the District's motion to dismiss Count One will be denied.

### C.      42 U.S.C. § 1983 Claim (Counts Two and Three)

#### 1.      Elements of a First Amendment Retaliation Claim

Herring brings a First Amendment retaliation claim under 42 U.S.C. § 1983 against

Golde and Senatore in Count Two and against the District in Count Three.  Section 1983 "is not

itself a source of substantive rights, but a method for vindicating federal rights elsewhere

conferred."  *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979).  "[T]o plead a retaliation claim

under the First Amendment, a plaintiff must allege[] (1) constitutionally protected conduct, (2)

retaliatory action sufficient to deter a person of ordinary firmness from exercising his

constitutional rights, and (3) a causal link between the constitutionally protected conduct and the

retaliatory action."  *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

The District argues that Herring did not allege that she engaged in constitutionally

protected activity sufficient to meet the first element of her retaliation claim.[10]  However,

---

[10] The District additionally argues that Herring did not allege any timely constitutionally protected conduct, rendering her § 1983 claims untimely.  The timeliness analysis conducted for Herring's § 504 claim also applies to her § 1983 claims because § 1983 claims also have a two-year statute of limitations and federal law governs the accrual of the claims.  *See Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998) (citing *Genty v. Resolution Trust Corp.*, 937 F.2d

Herring's Amended Complaint includes allegations that she spoke out on behalf of disabled students at meetings and hearings (*see* Am. Compl. ¶¶ 12, 19, 14, 30, 36), and that she issued complaints and reports regarding the District's alleged discrimination of disabled students and of African American disabled students (*see id.* ¶¶ 8, 50). These allegations sufficiently allege protected speech for purposes of a motion to dismiss. *See Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 284 (3d Cir. 2004) ("[P]rivate speech (unless obscene or fighting words or the like) is . . . protected.").

The elements of a retaliation claim under § 504 of the Rehabilitation Act are the same as the elements of a retaliation claim under 42 U.S.C. § 1983 that is predicated on a First Amendment violation. *See Deflaminis*, 480 F.3d at 267. Therefore, for the reasons discussed above relating to the second and third elements of Herring's § 504 claim, Herring has sufficiently alleged the second and third elements of her § 1983 First Amendment retaliation claims.

### 2.    Municipal Liability

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, the District can be held liable for Herring's alleged constitutional deprivations only if there is a causal link between a policy or custom of the municipality and Herring's alleged deprivations. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Generally, a policy or custom can be demonstrated by a formal policy statement, decision, or regulation; persistent practices that give the custom the force of law; or actions by officials who

---

899, 919 (3d Cir. 1991)); *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599-600 (3d Cir. 1998); 42 Pa. Cons. Stat. § 5524. Thus, for the reasons discussed above, Herring's § 1983 claims based on the trespass citations issued on January 7, 2005 are also timely.

have final policymaking authority. *Id.* at 215 (citations omitted). The official policy or custom may also be shown by a failure to train. *Id.* (citation omitted). Therefore, in order for the District to be liable under § 1983, Herring must allege that the actions of the District or its employees that deprived her of her federally protected free speech rights either resulted from policy or custom or were done by employees with final policymaking authority.

Herring's Amended Complaint contains new facts that allege the District engaged in a policy or custom of preventing advocates from disclosing information about inappropriate programs and other deficiencies. (*See* Am. Compl. ¶ 60.) These new facts include allegations that as part of this policy or custom, the District allowed teachers to shred files, allowed a psychologist to hide hundreds of students' files in his home's basement, and prevented Herring's access to teachers and other staff. (*Id.*) The District argues that Herring's claim fails because these allegations are "unsupported conclusions without factual basis" and are "outlandish and unsubstantiated." (Dist. Mot. to Dismiss 11.) These facts are not conclusions, however, because they allege specific actions. Furthermore, for purposes of the motion to dismiss, the court must accept all of Herring's allegations as true.[11]

Additionally, Herring alleges that Golde, a policymaker, enforced the trespass notice and called the police to issue a citation in an attempt to restrain Herring's speech. (Am. Compl. ¶¶ 41, 61.) These facts allege liability through the actions of an official with final policymaking authority and are sufficient for a motion to dismiss. *See Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989) ("A single incident violating a constitutional right done by a governmental

---

[11] Although the dates of these events are not specified, it appears that these alleged events took place in 2004 and therefore are barred by the statute of limitations.

agency's highest policymaker for the activity in question may suffice to establish an official

policy." (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 (1986))).  Based on Golde's

alleged actions, Herring has sufficiently averred municipal liability for purposes of a motion to

dismiss.  Because Herring has sufficiently alleged a § 1983 First Amendment retaliation claim

and municipal liability, the District's motion to dismiss the § 1983 claim against it will be

denied.

### 3.        Golde's and Senatore's Individual Actions

To state a § 1983 claim against Golde and Senatore in their individual capacities, Herring

must allege their individual involvement.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d

Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of

actual knowledge and acquiescence."  *Id.* at 1207.   Golde and Senatore argue that Herring's

claim against them must fail because the only allegation against Senatore is that she wrote a letter

in May 2004 and there are no allegations against Golde.[12]   Herring responds that her allegations

of individual involvement, knowledge, and acquiescence are sufficient to survive a motion to

dismiss.

---

[12] Golde and Senatore also point to the language in *Rode* that stated that "[a]llegations of participation or actual knowledge and acquiescence . . . must be made with *appropriate particularity*."  *See* 845 F.2d at 1207 (emphasis added).  Relying on *Rode*, Golde and Senatore argue that Herring's allegations of personal involvement are not particular, or specific, enough to establish liability.  The Third Circuit has not readdressed *Rode* in light of *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 US. 163 (1993) and *Thomas*, 463 F.3d 296, both of which held that the notice pleading standard of Rule 8 applies to civil rights claims.  However, in *Thomas*, the Third Circuit stated that "a civil rights complaint filed under § 1983 against a government official need only satisfy the notice pleading standard of Rule 8(a)." 463 F.3d at 295.  Therefore, although Herring must allege individual involvement, the pleading standard for alleging individual involvement is notice pleading, and not a heightened, particularized standard.

Herring's Amended Complaint sufficiently alleges personal involvement by both Golde and Senatore for purposes of a motion to dismiss. Specifically, Herring alleges that Golde or Senatore called the police on January 7, 2005 to have trespass citations issued to Herring for her presence on the District's property on January 7, 2005 and on December 20, 2004. (Am. Compl. ¶ 41.)

### 4.    Immunity

Golde and Senatore also argue the § 1983 claim against them should be dismissed because they are entitled to immunity. Golde is entitled to immunity on Herring's claim that he is individually liable under § 1983 for providing false testimony at her criminal trespass trial (*see id.* ¶ 54; Pl. Opp'n to Def. Mot. to Dismiss 15).[13] As the Supreme Court has stated, "§ 1983 does not allow recovery of damages against a private party for testimony in a judicial proceeding." *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983); *see also Kulwicki v. Dawson*, 969 F.2d 1454, 1467 n.16 (3d Cir. 1992); *Brawer v. Horowitz*, 535 F.2d 830, 836-37 (3d Cir. 1976).[14]

Golde and Senatore are not entitled to qualified immunity on Herring's claim that they

---

[13] Herring's reliance on *Johnson v. City of Chester*, 10 F. Supp. 2d 482 (E.D. Pa. 1998), to support her argument that Golde is not entitled to immunity on the claim that he falsely testified against her is misplaced. The *Johnson* plaintiff brought claims against the mayor and police commissioner for improperly charging and twice prosecuting her; she did not allege they falsely testified against her at her criminal trial. A different legal analysis applies to each type of activity. Therefore, the immunity analysis in *Johnson* is not applicable to Herring's allegation that Golde falsely testified at Herring's criminal trial.

[14] Courts in the Third Circuit have *sua sponte* raised the issue of absolute immunity. *See, e.g.*, *Martin v. Keitel*, 205 F. App'x 927-28 (3d Cir. 2006) (affirming district court's *sua sponte* dismissal of suit against prosecutor on basis that he was entitled to absolute immunity from suit for civil damages); *Deangelo v. Brady*, 185 F. App'x 173, 174-75 (3d Cir. 2006) (affirming district court's *sua sponte* dismissal of suit against defendants that were entitled to absolute immunity).

retaliated against her by calling the police when she arrived on the District's property without

giving prior notice.  Government officials performing discretionary functions who are sued in

their individual capacities are entitled to qualified immunity for their actions if their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person

would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Malley v. Briggs*,

475 U.S. 335, 341 (1986) (determining that qualified immunity "provides ample protection to all

but the plainly incompetent or those who knowingly violate the law").  Qualified immunity is an

affirmative defense that the official has the burden of pleading.  *See Siegert v. Gilley*, 500 U.S.

226, 231 (1991); *Thomas*, 463 F.3d at 293.  Because qualified immunity is an immunity from suit,

rather than a defense to liability, the Supreme Court has repeatedly encouraged the resolution of

immunity questions early in proceedings.  *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001);

*Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *Anderson v. Creighton*, 483 U.S. 635,

646 n.6 (1987).

    Courts use a two-prong analysis to determine whether officials are entitled to qualified

immunity.  First, the court must determine if, taken in the light most favorable to the party

asserting the injury, the facts alleged show that the defendant violated a constitutional right.

*Saucier*, 533 U.S. at 201.  Second, if the initial prong is satisfied, the court must determine

whether that right was clearly established at the time of the alleged violation.  *Id.* at 201-02.  The

second prong requires a fact-specific inquiry into whether a reasonable official would know that

his conduct in that situation was unlawful.  *Id.*

    Herring's allegations meet the first prong.  As discussed above, viewing the facts in the

light most favorable to her, Herring has sufficiently alleged that Golde and Senatore violated her

First Amendment rights by taking retaliatory actions designed to chill her speech.

Under the second prong, "[w]hether a federal right was clearly established at a particular time is a question of law." *Elder v. Holloway*, 510 U.S. 510, 511 (1994).  Furthermore, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640 (quoting *Harlow*, 457 U.S. at 819).  Additionally, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Id.* at 639 (quoting *Harlow*, 457 U.S. at 819).  The action is "assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.*

Golde and Senatore contend that Herring's right to attend a due process hearing on the District's property without having to give prior notice of her presence is not clearly established. Specifically, they argue that there is no statutory or case law that makes it either illegal or a violation of an individual's constitutional right to call the police when an individual has been asked to give prior notice of her presence on school property but failed to give that notice.  Golde and Senatore also argue that, as school officials, they are responsible for promulgating rules to keep the school safe and requiring a visitor to give prior notice of her presence falls under the auspices of this responsibility.  Herring responds that under IDEA, *see* 20 U.S.C. § 1415(h), her client, who was the parent of a disabled student, had a statutory right to have counsel at due

process proceedings.[15]  Thus, Herring concludes that her right to speak for her client and be

present at the due process hearing naturally follows from her client's right, and reasonably

objective school officials would have known about this clearly established right at the relevant

time.[16]

In their qualified immunity arguments, the parties misconstrue which of Herring's rights

must have been clearly established as of January 2005.  Because Herring's claim is based on First

Amendment retaliation, the right that must be addressed is whether she had a clearly established

constitutional right as of January 2005 to be free from retaliation because of her First Amendment

protected activity.  As the Supreme Court noted in 1998, the general rule that the First

Amendment bars retaliation for protected speech "has long been clearly established."  *See*

*Crawford-El v. Britton*, 523 U.S. 574, 592 (1998).  Furthermore, the right to be free from

retaliation because of protected activity is a clearly established right of which a reasonable official

would have known.  *See Harlow*, 475 U.S. at 818-19 ("If the law was clearly established, the

immunity defense ordinarily should fail, since a reasonably competent public official should know

the law governing his conduct.").  Looking at the specific contours of Herring's case, the right of

an advocate to be free from retaliation in the form of citations for defiant trespass because of her

complaints that a school district had improperly handled the education of disabled students was

---

[15] The transcript of the hearing reveals that Herring was not initially representing the child or mother, but she entered an appearance during the course of the proceeding.

[16] Herring argues that she had a federal statutory right to be at the due process hearing. Notably, however, no one actually prevented Herring from coming on to school property or attending the due process hearing.  Specifically, it appears that Golde and Senatore did not prevent Herring's access to the District's property, and they did not prevent her from attending the due process hearing.  Rather, they required her to give advance notice if she was going to come on to school property.

clearly established as of January 2005.  The second prong is therefore also satisfied.

Golde and Senatore respond that even if Herring's right was clearly established, they were acting in good-faith fulfillment of their responsibility to keep the school safe and are still entitled to qualified immunity.  However, determining whether Golde and Senatore acted with retaliatory intent or with the good-faith intent to keep the school safe requires focusing on their subjective motives, which frequently turns on credibility assessments.  *See Crawford-El*, 523 U.S. at 599. Determining their subjective motives is not appropriate when considering a motion to dismiss.

In conclusion, in January 2005, Herring had a clearly established right, of which a reasonable school official would have known, to be free from retaliatory actions caused by her protected First Amendment activity.  Therefore, at this point I cannot conclude that Golde and Senatore are entitled to qualified immunity on Herring's First Amendment retaliation claim. Their motion to dismiss on the basis of qualified immunity will be denied accordingly.[17]

## III.    Conclusion

Herring has sufficiently alleged a § 504 retaliation claim in Count One and a First Amendment retaliation claim under 42 U.S.C. § 1983 in Count Two and Count Three. Additionally, Golde and Senatore have not demonstrated that they are entitled to qualified immunity on Herring's § 1983 First Amendment retaliation claim, and their motion to dismiss

---

[17] The court is mindful that the qualified immunity defense is to be resolved as early as possible in the proceedings.  Therefore, the denial of Golde and Senatore's motion to dismiss on the basis of qualified immunity is without prejudice to their right to reraise the issue after appropriate discovery.  For example, discovery on the issues that directly bear on the qualified immunity defense, such as the actions actually taken by Golde and Senatore, may provide a more complete record on which to decide the issue of qualified immunity.  After discovery on the issues that directly bear on this defense, Golde or Senatore may move for partial summary judgment if the undisputed facts so warrant.  *See Crawford-El*, 523 U.S. at 598-600.

Count Two on the basis of qualified immunity will be denied.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| CAROL T. HERRING, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 06-5525 |
| v. | : | |
| | : | |
| CHICHESTER SCHOOL DISTRICT et al., | : | |
| Defendants. | : | |

## Order

AND NOW on this _____ day of February 2008, upon careful consideration of defendants' motion to dismiss the amended complaint (Docket No. 36) and plaintiff's response thereto, IT IS HEREBY ORDERED that:

1.  Defendants' motion to dismiss is DENIED.

2.  Defendants shall file an answer to the amended complaint within 20 days of the date of this Order.


_____William H. Yohn Jr._____
William H. Yohn Jr., Judge